UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Roberta Larsen,                                              File No. 21-cv-2324 (ECT/DTS)

      Plaintiff,

v.                                                                    **OPINION AND ORDER**

Menard, Inc., and ARAMARK
Uniform & Career Apparel, LLC,

      Defendants.

---

James P. Carey and Marcia K. Miller, SiebenCarey, P.A., Minneapolis, MN, for Plaintiff Roberta Larsen.

Paul A. Rajkowski and Troy A. Poetz, Rajkowski Hansmeier Ltd., St. Cloud, MN, for Defendant Menard, Inc.

Allison N. Krueger, Eugene C. Shermoen, Jr., and Melissa K. Rislov, Arthur, Chapman, Kettering, Smetak & Pikala, PA, for Defendant ARAMARK Uniform & Career Apparel, LLC.

---

      Plaintiff Roberta Larsen sustained injuries when she tripped and fell on a rug in a Menards store in Elk River, Minnesota.  In this diversity case removed from Sherburne County District Court, Larsen claims that her fall and injuries were caused by the negligence of the store's owner, Defendant Menard, Inc., and the rug's supplier, ARAMARK Uniform and Career Apparel, LLC.  ARAMARK seeks summary judgment, and its motion will be granted because no reasonable juror could find that ARAMARK breached a duty to Larsen or caused Larsen's injuries.

I[1]

The following facts are undisputed or described in a light most favorable to Larsen. At around noon on August 7, 2021, Larsen tripped on a floor mat[2] as she was exiting a Menards store in Elk River. Compl. [ECF No. 1-1]; Larsen Tr. [ECF No. 31-1] at 2–4.[3] She fell, hit her head on the exit door frame, hit her right knee on the ground, and lost consciousness for an uncertain amount of time. Larsen Tr. at 3–4; *see also* ECF No. 31-1

---

[1]     There is subject-matter jurisdiction over this case under the general diversity statute, 28 U.S.C. § 1332(a). There is complete diversity of citizenship between Larsen, on the one hand, and Defendants, on the other. Larsen is a Minnesota citizen. Compl. [ECF No. 1-1] ¶ 1. The Notice of Removal alleges that Menard maintains "its principal place of business in Eau Claire, Wisconsin." Not. of Removal [ECF No. 1] ¶ 12. The Notice does not mention Menard's state of incorporation, but publicly available Wisconsin Secretary of State business filings show that it was organized under Wisconsin law. *See* https://onestop.wi.gov/DFIAnnualReports/BusinessDetails/1M11277 (last visited May 6, 2023); 28 U.S.C. § 1332(c)(1). ARAMARK's sole member is a corporation—Aramark Uniform & Career Apparel Group, Inc.—that maintains its principal place of business in Pennsylvania and is incorporated under Delaware law. Not. of Removal ¶ 11; *see E3 Biofuels, LLC v. Biothane, LLC*, 781 F.3d 972, 975 (8th Cir. 2015) (recognizing that an LLC's citizenship is that of its member or members). In other words, neither Defendant shares Larsen's Minnesota citizenship. The Notice of Removal alleges that the amount in controversy is met, but in conclusory fashion. *See Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 87 (2014). In response to the Court's *sua sponte* inquiry, however, ARAMARK submitted an affidavit detailing the $63,674.34 in medical expenses Larsen has incurred to date and describing a future surgery she is likely to have that will cost an estimated $19,330.00. ECF No. 39. This, of course, does not include other amounts Larson seeks, like pain-and-suffering damages. This supplemental evidence is appropriate, *Leflar v. Target Corp.*, 57 F.4th 600, 605 (8th Cir. 2023), and shows that the $75,000 amount-in-controversy threshold also is met.

[2]     The Parties use the terms "rug," "mat," and "floor mat" interchangeably.

[3]     Page cites are to CM/ECF pagination appearing in a document's upper right corner, not to a document's original pagination.

2

at 15 (Answer to ROG No. 15).  Larsen did not see the floor mat before she fell.  Larsen Tr. at 3.  Larsen's husband was walking in front of her and did not see the trip or fall.  *Id*.

When Larsen regained consciousness, she was lying on the floor mat (over which she had tripped) in the doorway.  Larsen Tr. at 3.  Larsen had injured her right wrist and right knee, sustained a bump above her forehead, and broke her eyeglasses in the fall.  *Id*.  Larsen sat in a chair for about 15 minutes after the fall because she could not walk and felt dizzy.  *Id*. at 4.  She sought medical assistance the next day, and was diagnosed with a concussion, a broken arm, and a knee injury.  *Id*. at 4–5.  Her arm was put in a sling, and she later received cortisone shots in her right wrist, opting not to have surgery.  *Id*. at 5–6.  She eventually had surgery on her right knee.  *Id*. at 5.

Ashley Heitschmidt—Menards' first assistant front-end manager at the time—was in the area where Larsen fell, and she responded to the fall.  Heitschmidt did not witness Larsen's fall "with [her] own eyes," but she watched it afterward on the surveillance video.  Heitschmidt Tr. [ECF No. 36-1] at 4, 8.  Heitschmidt's attention was drawn to the scene when she "heard something hit the door," and there was a "ruckus." *Id*. at 8.  From viewing the surveillance video, it was clear to Heitschmidt that "Larsen caught her rearward foot on a pucker in the rug," causing her to fall.  *Id*. at 9.  Heitschmidt tended to Larsen at the scene and completed an incident report.  Heitschmidt Tr. at 9–11; *see also* Larsen Tr. at 4.  Heitschmidt remembers having consistent problems with that rug throughout the day, and that each time a patron would push a cart over the rug, the rug would pucker, requiring Heitschmidt to flatten the rug out.  Heitschmidt Tr. at 10; see *also id*. at 11 (agreeing that "[i]t is simply people pushing their carts and heavier items over the rug . . . that causes

3

them to pucker"). Heitschmidt also agreed that "when the rug puckers, it becomes a tripping hazard." *Id*. at 10.

While Larsen was sitting in the chair just after she fell, she saw the floor mat "repeatedly buckle[] every time a cart went over it or people walked on it," and Heitschmidt "fixed it many times" by "pull[ing] it straight," until Heitschmidt finally "[r]olled it up and [] had somebody haul it away." Larsen Tr. at 8; *see also* Heitschmidt Tr. at 10; *but see id*. at 14 (Heitschmidt stating that she cannot recall "whether that specific rug had been puckered and flattened on any occasions prior to Plaintiff's fall on that day"). While she was sitting near the exit, Larsen also witnessed another woman trip on the floor mat and catch herself before falling. *Id*. at 8. Larsen testified that she has "no idea" whether the floor mat was defective in any way. *Id*.

The Elk River Menards store only uses floor mats supplied by ARAMARK. Heitschmidt Tr. at 5–6. ARAMARK drops off clean floor mats and takes away soiled ones on a weekly rotating basis. *Id*. at 4; *see also* Jones Decl. [ECF No. 30] ¶ 6. Menards' employees store soiled floor mats in a janitor's closet in the front of the store, and an ARAMARK route service representative picks up the soiled floor mats and "leave[s] the store with an inventory of three clean mats in the closet." Heitschmidt Tr. at 4–5; Jones Decl. ¶ 6. The floor mats are "previously inspected by a team before they are placed in [the route service representative's] truck," and the ARAMARK representative also inspects the mats himself before he delivers them to "ensure they are clean and in a nice, tight roll upon delivery." Jones Decl. ¶ 8. The ARAMARK representative generally "do[es] not place the mats in their locations in the store"—he "only deliver[s] them to the janitor

4

closet." *Id*. ¶ 7.  Though Heitschmidt testified that if there was already a rug laying on the floor when the ARAMARK representative delivered the new batch, the representative would pick up the rug in use and replace it with a clean rug, *see* Heitschmidt Tr. at 7, no one alleges that is what happened here.  When a floor mat is determined to be "extremely worn or defective," it is "discarded regardless of how long [it] has been in use." *Id*. ¶ 8.

Heitschmidt testified that Menards' employees would place floor mats at the entrance and exit of the store if it were raining or snowing outside to keep customers from tracking rain, snow, or moisture into the store.  Heitschmidt Tr. at 4, 6–7.  Once the rain or snow dried up and there was no longer a slip hazard, the floor mats were picked up and put in the janitor's closet.  *Id*. at 6.  This was all done at the Menards' employees' discretion, with no protocol for placement and removal.  *Id*. at 6, 11–13.

Heitschmidt was aware that the floor mats would "pucker or wrinkle up," and she would "straighten [the rug] out or tell somebody that is closer to it to straighten it out." Heitschmidt Tr. at 8, 12–14.  Heitschmidt was personally aware of "two or three" occasions that another patron or employee of Menards tripped on a puckered rug.  *Id*. at 8.  This "[t]ypically" happened "when somebody would push a heavy cart over them, it would cause it to pucker." *Id*. at 8, 10–14.  Heitschmidt observed the puckering "[p]robably about every time that . . . a heavy cart went across them." *Id*. at 12.

There is no evidence that anyone at the Elk River Menards ever reported to ARAMARK that the floor mats would pucker or wrinkle, or that the particular floor mat (or type of floor mat) on which Larsen tripped ever was reported as defective to

5

ARAMARK. *See id*. at 8, 12–14.[4] Heitschmidt does not recall any meetings talking about the floor mats, nor does she recall anyone ever bringing the issue of rug-puckering or Larsen's fall to ARAMARK's attention. *Id*. at 11–14. The ARAMARK service representative does not address the notice issue specifically, though he does state that to his knowledge, "ARAMARK was not contacted for a replacement mat outside of the normal delivery schedule in August 2021." ECF No. 30 ¶ 9.

Larsen's Complaint alleges that she was "caused to trip on a rug that was supplied by" ARAMARK while on Menards premises. *See* Compl. at § III. The Complaint alleges that "said fall was the result of the negligence and carelessness of" Defendants. *Id*. at § IV.

II

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if its resolution might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The evidence of the

---

[4]   Menard produced one email from August 2018, apparently from a Menard distribution center in Plano, Illinois, where the Menard's maintenance manager emailed ARAMARK with the following message, entitled "Rugs": "Was told someone tripped over this one today. Ripples along the edges are not good and noticed the piece missing also. Please make sure the rugs we receive are flat." ECF No. 31-1 at 20–21. There is no evidence as to what kind of rug this email referred, or whether a defect caused the ripples and missing piece. The email is of no help in determining whether the ARAMARK floor mat at issue here was defective or whether ARAMARK had notice of any defect.

non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

Minnesota state substantive law applies. *See Oien v. Home Depot U.S.A., Inc.,* No. 20-cv-1982 (KMM/ECW), 2022 WL 1665401, at *2 (D. Minn. May 25, 2022) (citing *Morgantown Mach. & Hydraulics of Ohio, Inc. v. Am. Piping Prods., Inc.*, 887 F.3d 413, 415 (8th Cir. 2018) (providing that federal courts sitting in diversity apply state substantive law); *Netherlands Ins. Co. v. Main Street Ingredients, LLC*, 745 F.3d 909, 913 (8th Cir. 2014) ("Because the parties do not dispute the choice of Minnesota law, we assume, without deciding, Minnesota law applies. . . .")).

The parties appear to treat Larsen's claim under two theories—product defect and negligence for failure to inspect. *See generally* Mem. in Supp. [ECF No. 29], Mem. in Opp'n [ECF No. 35]. The Minnesota Supreme Court has summarized:

> Products liability is "[a] manufacturer's or seller's tort liability for any damages or injuries suffered by a buyer, user, or bystander as a result of a defective product. Products liability can be based on a theory of negligence, strict liability, or breach of warranty." *Black's Law Dictionary* 1328 (9th ed. 2009). When liability is based on a theory of negligence, "a plaintiff must prove (1) the existence of a duty of care, (2) a breach of that duty, (3) an injury, and (4) that the breach of the duty of care was a proximate cause of the injury." *Domagala v. Rolland*, 805 N.W.2d 14, 22 (Minn. 2011). Duty is a threshold question "[b]ecause a defendant cannot breach a nonexistent duty." *Id.* Further, "whether there exists a duty is a legal issue for court resolution." *Germann v. F.L. Smithe Mach. Co.*, 395 N.W.2d 922, 924 (Minn. 1986). If no duty exists, it is error for the district court to submit the negligence claim to the jury. *See id.* at 924–25.

*Glorvigen v. Cirrus Design Corp.*, 816 N.W.2d 572, 581–82 (Minn. 2012).

Larsen's theory is based, in part, on ARAMARK breaching its duty to inspect the floor mats it provided to the Elk River Menards. *See* Mem. in Opp'n [ECF No. 35] at 6. This claim cannot survive summary judgment because there is no evidence to support a genuine fact issue on either the breach or causation elements. There is no evidence in the record to support a claim that the rug on which Larsen tripped was delivered by ARAMARK in a hazardous condition, that ARAMARK failed to inspect the rug, or that ARAMARK's inspections "fell short of reasonable," *see Oien*, 2022 WL 1665401, at *3. Larsen's theory is that, because the rug buckled, there must have been a hazardous defect in the rug itself, and ARAMARK should have discovered this upon a reasonable inspection. This sounds like a res ipsa loquitur argument, but as confirmed at oral argument, Larsen does not argue res ipsa loquitur.[5] In the absence of any evidence of ARAMARK's breach,

---

[5]    Judge Menendez recently summarized the law with respect to res ipsa loquitur:

> *Res ipsa loquitur* contemplates "the minimal kind of circumstantial evidence which is legally sufficient to warrant an inference of negligence." *Olson v. St. Joseph's Hospital*, 281 N.W.2d 704, 708 (Minn. 1979). Applied in appropriate cases, the doctrine is "designed to assist a plaintiff in discharging his obligation to make out a prima facie case of negligence and to aid the jury in performing its factfinding function." *Id*. When *res ipsa loquitur* applies, it "creates a permissive inference of negligence but does not compel it. It does not shift the burden of proof. It simply gets the matter to the jury under an appropriate instruction." *Mahowald v. Minn. Gas Co*., 344 N.W.2d 856, 864 (Minn. 1984). "Th[is] doctrine is essentially one of evidence rather than of tort law." *Peterson v. Minn. Power & Light Co*., 291 N.W. 705, [707] (Minn. 1940).
>
> While *res ipsa loquitur* permits an inference of negligence, a mere invocation of the doctrine is insufficient to survive

or that such breach proximately caused Larsen's injury, summary judgment must be granted on Larsen's failure-to-inspect claim against ARAMARK.

Larsen's claim also fails under a product defect theory. Under Minnesota law, claims for negligence and strict product liability are "functionally merged into one." *Oien*, 2022 WL 1665401, at *5 (citing *Nimeth v. Prest Equip. Co.*, No. C1-93-685, 1993 WL 328767, at *1 (Minn. Ct. App. Aug. 31, 1993); *In re Shigellosis Litig.*, 647 N.W.2d 1, 11 (Minn. Ct. App. 2002); *Delfino v. Medtronic, Inc.*, A19-1462, 2019 WL 2415049, at *11 n.9 (Minn. Ct. App. Jun 10, 2019)). To recover under a strict liability theory, Larsen must establish: "(1) that the defendant's product was in a defective condition unreasonably dangerous for its intended use, (2) that the defect existed when the product left the

---

summary judgment. Instead, a plaintiff must show that three conditions are present: ["](1) that ordinarily the injury would not occur in the absence of negligence; (2) that the cause of the injury was in the exclusive control of the defendant; and (3) that the injury was not due to plaintiff's conduct." *Hoven v. Rice Mem'l Hosp.*, 396 N.W.2d 569, 572 (Minn. 1986); *Flem[]ing v. Hallum*, 350 N.W.2d 417, 419 (Minn. Ct. App. 1984) ("[T]he plaintiff must establish [these] three conditions before a claim may be submitted on the theory of res ipsa loquitur."). Moreover, a plaintiff must show that the doctrine applies with evidence, not mere assertions. *See Weiby v. Wente*, 264 N.W.2d 624, 629 (Minn. 1978); *Pape v. Macks, LLC*, No. A10–1417, 2011 WL 1466433, at *4 (Minn. Ct. App. Apr. 19, 2011) (affirming summary judgment because plaintiff brought no evidence, other than his own assertions, that the incident normally does not happen in the absence of negligence, that defendants had exclusive control, or that he did not voluntarily contribute to the injury).

*Oien*, 2022 WL 1665401, at *3. These elements are not met here.

defendant's control, and (3) that the defect was the proximate cause of the injury sustained." *Bilotta v. Kelley Co.*, 346 N.W.2d 616, 623 n.3 (Minn. 1984); *Duxbury v. Spex Feeds, Inc.*, 681 N.W.2d 380, 393 (Minn. Ct. App. 2004).  Here, there is no evidence that the floor mat was in a defective condition, that the defect existed when the floor mat left ARAMARK's control, or that such defect was the proximate cause of Larsen's injury.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED THAT:**

1. Defendant ARAMARK Uniform & Career Apparel, LLC's motion for summary judgment [ECF No. 27] is **GRANTED**; and

2. Plaintiff Roberta Larsen's claims against ARAMARK are **DISMISSED WITH PREJUDICE**.

Dated:  May 8, 2023                             s/ Eric C. Tostrud
                                                Eric C. Tostrud
                                                United States District Court